# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

GEORGE F. FORTNA,                             )
                                              )
                                              )
                    Plaintiff,                )
                                              )
v.                                            )        No.  05-CV-587-SAJ
                                              )
MICHAEL J. ASTRUE,                            )
Commissioner of Social Security              )
Administration,[1/]                           )
                                              )
                    Defendant.                )

## OPINION AND ORDER[2/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[3/]  Plaintiff asserts that the Commissioner erred because (1) the ALJ failed to properly develop Plaintiff's alleged mental impairment; and (2) the ALJ failed to properly evaluate Plaintiff's alleged mental impairment.  For the reasons discussed below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

---

[1/]   Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section  42 U.S.C. § 405(g) of the Social Security Act.

[2/]

This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[3/]

Administrative Law Judge Leslie S. Hauger, Jr. (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated June 9, 2000. [R. 277-83].  Plaintiff appealed the decision by the ALJ to the Appeals Council.  The Appeals Council issued a notice on July 8, 2004, stating that the ALJ's June 9, 2000, decision denying benefits to Plaintiff is the final decision of the Commissioner.  [R. 250-52].

## 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, George F. Fortna, was born February 25, 1955 [R. 11, 14]. Plaintiff has a 9th grade education, having dropped out of school in the 10th grade. [R. 393, 400]. Plaintiff's past relevant work includes work as a courier driver, parking lot cleaner and attendant, tube cutter, construction laborer, shipping receiver, wrecker driver, dishwasher, and security guard. [R. 95, 103-04, 423-24]. Plaintiff protectively filed for social security benefits by application dated July 13, 1995. [R. 50-52]. Plaintiff originally claimed his disability was due to Attention Deficit Disorder (ADD), short attention span, and back pain beginning on June 1, 1995. [R. 27, 63]. Plaintiff now asserts that he is unable to do any of his past relevant work or any other work due to depression, personality disorder, chronic back pain, hip pain, and leg pain. [R. 99-100, 107, 195, 278-79, 313, 396-97, 420-21]. In November, 1995, Plaintiff was diagnosed with major depression and had a global assessment of functioning (GAF) score of 48.[4/] [R. 199]. By May, 1996, Plaintiff's depression had increased, he had suicidal thoughts, and his GAF score had dropped to 40.[5/]  [R. 202-04]. In June, 1996, Plaintiff attempted suicide by overdosing on 33 of his wife's Xanax pills. [R. 183-84, 353, 369]. Since the suicide attempt, the record indicates that Plaintiff continued to suffer from depression and chronic back pain. [R. 376-77, 381-82,

---

[4/]

The GAF score is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000). A GAF score between 41-50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.*

[5/]

A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* at 34.

397-99, 415-16].

Plaintiff's claim for social security benefits was denied at the initial and reconsideration levels. [R. 59-84].   Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) . [R. 85-84].  A hearing before the ALJ was held on April 23, 1997. [R. 25].  The ALJ rendered a decision on June 11, 1997, concluding that Plaintiff was not disabled within the meaning of the Social Security Act. [R. 7-19].  On January 7, 1999, the Appeals Council denied request for review, affirming the findings of the ALJ.[6/] Plaintiff then appealed the ALJ decision by filing a complaint in the United States District Court for the Northern District. [R.  312].  On January 5, 2000, the United States District Court concluded that the ALJ's decision was not supported by substantial evidence, and reversed and remanded the case for reconsideration of the evidence. [R. 311-18].  The case was then assigned to the ALJ pursuant to the order of the Appeals Council. [R. 319]. Another hearing was held before the ALJ on June 5, 2000. [R. 392].  On June 9, 2000, the ALJ rendered another decision adverse to Plaintiff, finding him not disabled as defined under the Social Security Act. [R. 277-91].  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason

---

[6/]   The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

of any medically determinable physical or mental impairment
. . . .

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act only if his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[7]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*.  *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  The Court will, however, meticulously examine the entire record to determine if the

---

[7]   Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972).  Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972.  If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings").  If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled.  If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work.  A claimant is not disabled if the claimant can perform his past work.  If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy.  If a claimant has the RFC to perform an alternate work activity, disability benefits are denied.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[8/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISIONS

#### A.  ALJ Decision on June 11, 1997

In the first ALJ decision on June 11, 1997, the ALJ found at Step One that Plaintiff had not engaged in any substantial gainful activity since June 1, 1995. [R. 14].  The ALJ found at Step Two that Plaintiff's paranoid personality disorder and hand injury were severe impairments that reduced Plaintiff's ability to work. [R. 13, 15].  The ALJ found, however, that Plaintiff's severe impairments neither met nor equaled the criteria for the Listings at

---

[8/]   Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Step Three of the sequential evaluation. [R. 15].  The ALJ made this determination based on objective medical evidence and an evaluation of Plaintiff's mental status delineated on the Psychiatric Review Technique Form (PRT) which was appended and incorporated as part of the ALJ's decision. [R. 12-13, 17-19].   Under the "B" criteria for Listing 12.08 (dealing with personality disorders), the ALJ found that Plaintiff had (1) a "slight" degree of limitation with respect to his activities of daily living; (2) a "moderate" degree of limitation in maintaining social functioning; (3) a "seldom" degree of limitation with respect to his concentration, persistence, or pace; and (4) one or two episodes of deterioration or decompensation in work or work-like settings. [R. 13, 17-19.]  Additionally, after viewing all of the evidence of record, the ALJ considered some of Plaintiff's allegations to be lacking credibility. [R. 12].

At Step Four, the ALJ concluded that Plaintiff had the "residual functional capacity to perform a full range of light work subject to only simple repetitive work with no dealing with the public." [R. 13].  The ALJ found, however, that Plaintiff's impairments and residual functional capacity precludes him from performing any of his past relevant work.  [R.  13, 15].

At Step Five, the ALJ posed a hypothetical question to the vocational expert containing all of pertinent information (age, education, work history, impairments, and residual functional capacity) related to the Plaintiff.  [R. 13, 15].  Based on the vocational expert's testimony, the ALJ concluded that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  [R. 13-15].

### B.  ALJ Decision on June 9, 2000

In the second ALJ decision on June 9, 2000, the ALJ found at Step One that Plaintiff had not engaged in any substantial gainful activity from June 1, 1995, to December 31, 1996. [R. 282].  The ALJ concluded that Plaintiff was involved in substantial gainful activity during 1997, but has not performed substantial gainful activity since January 1, 1998. [R. 280, 282].  The ALJ found at Step Two that Plaintiff's lumbar spine pain, depression, and personality disorder were severe impairments that reduced Plaintiff's ability to work. [R. 282].  The ALJ found, however, that Plaintiff's severe impairments neither met nor equaled the criteria for the Listings at Step Three of the sequential evaluation. [R. 282].  The ALJ made this determination based on objective medical evidence and an evaluation of Plaintiff's mental status delineated on the Psychiatric Review Technique Form (PRT) which was appended and incorporated as part of the ALJ's decision.  [R. 280-81, 284-92].  Under the "B" criteria for Listing 12.08 (dealing with personality disorders), the ALJ found that Plaintiff had (1) a "slight" degree of limitation with respect to his activities of daily living; (2) a "moderate" degree of limitation in maintaining social functioning; (3) an "often" degree of limitation with respect to his concentration, persistence, or pace; and (4) one or two episodes of deterioration or decompensation in work or work-like settings.  [R. 281, 290].  Additionally, after viewing all of the evidence of record, the ALJ considered some of Plaintiff's allegations to be lacking credibility.  [R. 280].

At Step Four, the ALJ concluded that Plaintiff had the "residual functional capacity to perform a full range of light work subject to only simple repetitive work with no dealing with the public." [R. 281].  The ALJ found, however, that Plaintiff's impairments and residual functional capacity precludes him from performing any of his past relevant work.  [R.  281,

282].

At Step Five, the ALJ posed a hypothetical question to the vocational expert containing all of pertinent information (age, education, work history, impairments, and residual functional capacity) related to the Plaintiff. [R. 281, 283].  Based on the vocational expert's testimony, the ALJ concluded that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  [R. 281-83].

## 4.  REVIEW

The Court finds that the ALJ failed to fully develop the record with respect to Plaintiff's alleged mental impairments.  This failure requires reversal because of its effect on the disability analysis as a whole.  Generally at issue is whether the ALJ erred in failing to develop Plaintiff's alleged mental impairments.  Specifically at issue, however, is whether the ALJ had a duty to develop the record relating to Plaintiff's mental impairments by ordering further psychological examination and testing of Plaintiff.

It is well settled that "the burden to prove disability in a social security case is on the claimant."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)); 20 C.F.R. §§ 404.1512(a), 416.912(a) (it is up to the claimant to prove to the Social Security Administration that claimant is disabled. *Id.*).  The claimant must bring everything that tends to prove disability to the attention of the Social Security Administration.  20 C.F.R. §§ 404.1512(a), 416.912(a).  Since a social security disability hearing is a nonadversarial proceeding, however, the ALJ has a responsibility "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  *Madrid*, 447 F.3d at 790.  This responsibility generally places a duty upon the ALJ to gather "pertinent, available medical records which come to

-8-

his attention during the course of the hearing." *Id.* (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)).

The ALJ's duty has been described as "one of inquiry, requiring the decision maker 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Hawkins*, 113 F.3d at 1164 (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983) (Brennan, J. concurring)).   Furthermore, the ALJ must develop "evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists."  *Hawkins*, 113 F.3d at 1164 (internal citation omitted).   The ALJ must "look[ ] fully into the issues" during a social security disability hearing, and "may stop the hearing temporarily and continue it at a later date if he or she believes that there is material evidence missing at the hearing." 20 C.F.R. §§ 404.944, 416.1444.

The Plaintiff contends that the ALJ failed in his duty to develop the record by not acting on Plaintiff's request for additional psychological testing, such as a Minnesota Multiphasic Personality Inventory (MMPI) test. The Defendant asserts, and this Court agrees, that the Commissioner "has broad latitude in ordering consultative examinations." *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  But "where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary." *Hawkins*, 113 F.3d at 1166.

How much evidence must the Plaintiff set forth in order to invoke the ALJ's duty to further investigate so as to fully and appropriately develop the record?  In *Hawkins*, the court dealt with this very question, stating:

Our review of the cases and the regulations leads us to conclude that the

> starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. . . .  Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which on its face must be substantial. . . .  Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

113 F.3d at 1167 (internal citations omitted).

The ALJ's duty to develop the record is heightened when the claimant appears before the ALJ without counsel.  *Madrid*, 447 F.3d at 790.  But when the claimant is represented by counsel, as in this case, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins*, 113 F.3d at 1167.  In fact, when the claimant is represented by counsel, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*  If claimant's counsel fails to raise or identify an issue, a duty will not be imposed "on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.   A consultative exam should be ordered by the ALJ "when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169.

Based on the record, the Court holds that the ALJ committed legal error by failing to rule on the request for psychological testing and failing to explain why he declined to order such testing in the most recent ALJ decision.  In other words, the issue was timely

raised by the Plaintiff, but was summarily disregarded by the ALJ.

Here, the Plaintiff has done his part of meeting his burden by setting forth some objective evidence in the record suggesting the existence of depression and anxiety related symptoms, including a suicide attempt during the alleged period of disability. [R. 99, 107, 130, 132, 144, 197-208, 332-34, 337, 347-49, 365, 369, 376-77]. Since Plaintiff was represented by counsel during the social security administrative hearings before the ALJ, the ALJ's heightened duty to fully develop the record was not triggered in this case. The ALJ had a duty, nonetheless, to fully develop the record by ordering a consultative examination so long as claimant's counsel raises or identifies an issue of material importance requiring further development.   *Hawkins*, 113 F.3d at 1167-68.

At the ALJ hearing in 2000, Plaintiff – through his counsel – raised the issue of needing further psychological testing, including an MMPI test, in order to determine the severity of Plaintiff's mental impairments. [R. 426-27]. Plaintiff requested the psychological testing because the mental diagnoses contained in the record are based on history and interviews. A consultative psychological examination would be of material assistance in confirming or negating the medical bases for Plaintiff's symptoms. Furthermore, the last time the Plaintiff had an MMPI was in 1990. [R. 426]. This test from 1990 is not contained in the record, and Plaintiff expressed doubt in being able to recover it. [R. 427]. Even if the 1990 MMPI was produced in the record, however, its staleness would likely override the results since the onset date in this case is June 1, 1995. [R. 27].

Defendant argues that the record regarding Plaintiff's mental limitations is complete – adequately showing Plaintiff's condition during the relevant time period – and therefore Plaintiff's argument is without merit and should be dismissed. Defendant also asserts that

since Plaintiff was able to work in 1997 with his mental impairment, Plaintiff's condition is not disabling.  The Court disagrees with both arguments.

First, Defendant's contention that the record is complete with respect to Plaintiff's mental impairments must fail.  Defendant cites to all of the medical evidence contained in the record without any explanation as to how these records adequately portrayed Plaintiff's mental ailments.  This bald assertion does not properly support Defendant's argument. After a review of the medical evidence contained in the record pertaining to Plaintiff's alleged mental impairments, it is certainly conceivable that further psychological testing to confirm evidence of these symptoms would be of material assistance in making a disability determination.  *See Hawkins*, 113 F.3d at 1169 ("[i]t would not be reasonable, however, to expect a claimant to demonstrate that evidence from a consultative examination, which has yet to be administered, would necessarily be dispositive." *Id.*).

Second, Defendant's argument that Plaintiff's ability to work as a courier driver in 1997 is proof that his mental impairments were not disabling also fails.   Defendant cites to *Orwick* to support the argument.  *See Orwick v. Sullivan*, 966 F.2d 368 (8th Cir. 1992). In *Orwick*, the claimant worked as a barber during her alleged period of disability.  *Id.* at 369-70.  The ALJ  determined at Step Four that claimant could return to her past relevant work as a barber.  *Id.* at 371.  In this case, however, the ALJ denied disability at Step Five, expressly finding that Plaintiff is unable to return to any of his past relevant work, including his work as courier driver. [R. 281-282, 424].  As a result, the facts in *Orwick* clearly differ from those in this case, commanding a different result.  Thus, Defendant's second argument is without merit.

The ALJ's failure to develop the record had an effect on the disability analysis as a

whole and the Court need not address the other issue raised by Plaintiff at this time. Although the current state of the record suggests that a consultative examination – specifically an MMPI – may be necessary, the Court leaves the decision whether to order a consultative exam up to the ALJ.  As such, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

It is so ordered this 1st day of May, 2007.


Sam A. Joyner
United States Magistrate Judge